Philip J. Nathanson Arizona State Bar #013624
**THE NATHANSON LAW FIRM**
8326 E. Hartford Dr., Suite 101
Scottsdale, AZ 85255
(480) 419-2578
(480) 419-4136
philipj@nathansonlawfirm.com

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| ALYSSA JONES,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>RIOT HOSPITALITY GROUP, LLC,<br>RHG VENTURES, LLC,<br>ERIC SANCHEZ, individually and<br>RYAN HIBBERT, individually,<br><br>　　　　Defendants. | No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

　　　　Plaintiff, ALYSSA JONES, by her attorneys, PHILIP J. NATHANSON and THE NATHANSON LAW FIRM, complains against the Defendants, RIOT HOSPITALITY GROUP, LLC, RHG VENTURES, LLC, ERIC SANCHEZ, individually, and RYAN HIBBERT, individually, and alleges as follows:

　　　　1.　Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 451, 1331, and 1343. This action is authorized and instituted pursuant to (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. Section 2000e-5(f)(1); (2) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a; (3) Arizona Civil Rights Act, A.R.S. §§41-1461 *et seq.* (the ACRA); and (4) Arizona state law on sexual battery.

　　　　2.　Venue is proper in this district pursuant to 28 U.S.C. § 1391.

3. The employment practices and sexual battery alleged to be unlawful were committed within the County of Maricopa, State of Arizona.

4. Defendant Riot Hospitality Group, LLC is an Arizona limited liability company having its principal place of business within the State of Arizona, County of Maricopa for purposes of jurisdiction and venue.

5. Defendant RHG Ventures, LLC is a member of Riot Hospitality Group, LLC and is an Arizona limited liability company principal place of business in the State of Arizona, County of Maricopa, for purposes of jurisdiction and venue.

6. Defendant Ryan Hibbert is a citizen of Maricopa County, Arizona. At all times relevant to this Complaint, Defendant, Ryan Hibbert was a principal in Riot Hospitality Group, LLC Defendant. Mr. Hibbert owned operated and managed El Hefe, and was the person in charge of all operations.

7. At all times relevant to this Complaint, Defendant, Eric Sanchez is a citizen in Maricopa County, Arizona and was a general manager at El Hefe, Scottsdale.

8. El Hefe is owned, operated and managed by Defendants RIOT HOSPITALITY GROUP, LLC and RHG VENTURES, LLC.

9. Plaintiff, ALYSSA JONES, has worked as a cocktail waitress at the El Hefe Super Macho Taqueria, in Scottsdale, Arizona ("El Hefe"), from November of 2015 to the present. Plaintiff lives in Chandler, Arizona.

10. At all relevant times, RIOT HOSPITALITY GROUP, LLC has continuously been an employer within the meaning of Title VII of the Civil Rights Act of 1964.

11. At all times Plaintiff, Alyssa Jones, performed her job satisfactorily.

12. Plaintiff was hired approximately two years ago by Defendant HIBBERT to work at El Hefe in Scottsdale.

13. After Plaintiff started working at El Hefe, Defendant HIBBERT would deliberately come around to the area where Plaintiff was working and would interact with Plaintiff during her shifts at El Hefe, asking her in the course of doing so if she would "hang out" with him.

14. Thereafter, at two company parties, Defendant HIBBERT insisted that Plaintiff drink to excess and be with him.

15. After one of these episodes, SANCHEZ gave Plaintiff a ride home, and began to socialize with her.  SANCHEZ ingratiated himself with Plaintiff by giving her better shifts at work so she would socialize with him.

16. When Plaintiff refused to continue socializing with SANCHEZ, he began to take away Plaintiff's shifts at work and impose on Plaintiff other adverse employment actions.

17. Defendants HIBBERT and SANCHEZ sexually harassed Plaintiff by requesting that Plaintiff and her co-workers (other cocktail waitresses) hang out with potential and actual customers who spend a lot of money drinking expensive bottles of wine and champagne, so those customers would want to come to El Hefe and consume such high-priced liquor

18. Defendants HIBBERT and SANCHEZ requested Plaintiff and her co-workers, all the time, to go to dinner with regular customers and big spenders so that Plaintiff could get them to come back to El Hefe and book tables with her.

19. During the 2015 Christmas party a Dierks Bentley's Whiskey Row bar HIBBERT forced Plaintiff into performing oral sex on him in order to keep her job.

20. Sometime around January or February of 2016, HIBBERT came to El Hefe and cut Plaintiff from work (took her off the working shift) and told her that they were going to go get massages. Plaintiff had no choice but to agree to HIBBERT's instruction.

21. HIBBERT then took Plaintiff to Omni Scottsdale Resort & Spa at Monteluccia. When Plaintiff entered the massage room she observed HIBBERT being completely naked. Plaintiff felt very uncomfortable in light of the situation and informed HIBBERT several times that she needed to go back to work. However, HIBBERT did not take Plaintiff to work upon her request.

22. On the evening of August 4, 2017, Plaintiff was working at El Hefe.

23. On the evening of August 4, 2017, a good friend of HIBBERT, REZWAN MANJI, was a customer of El Hefe, consuming alcohol.

24. Defendant HIBBERT and Defendant SANCHEZ encouraged Plaintiff to socialize with customers like HIBBERT'S friend, who came in and spent a lot of money buying and drinking alcohol.

25. After Plaintiff had already been working the dinner shift for a couple of hours, HIBBERT'S friend tried to grab Plaintiff and told her that it was his friend Steve's birthday, and he wanted to get a table and have Plaintiff join them. Plaintiff was working and did not respond right away.

26. Shortly thereafter, Plaintiff received a text message from HIBBERT'S friend saying that she had snubbed him and failed to give him attention.

27. Subsequently, Plaintiff's manager, and a couple of the other servers came up to her, asking her what did she do, because HIBBERT'S friend left El Hefe and did not spend a lot of money, as he otherwise would have, but for Plaintiff's rude behavior towards him.

28. Plaintiff's manager then instructed Plaintiff that she needed to text HIBBERT'S friend and try to make things better, and try to get him to come back to El Hefe and spend money.

29. Plaintiff followed her manager's instructions; texted HIBBERT'S friend and apologized. HIBBERT'S friend responded by asking Plaintiff to encourage him to come back to El Hefe, which she did, because of what her manager told her

to do. Then HIBBERT'S friend came back to El Hefe. They purchased a table and started to purchase some champagne.

30. HIBBERT'S friend then went up to one of Plaintiff's bosses and told him that he wanted Plaintiff to be cut immediately, meaning that she would be taken off the work shift that night so she could go drink with HIBBERT'S friend and his friends.

31. Plaintiff's boss said okay because HIBBERT'S friend was HIBBERT's best friend, and he spent a lot of money at El Hefe.

32. Plaintiff's boss and manager pulled her outside and told her that: "We are cutting you. But you can't go home, you have to go drink with him. You'll still get paid for" HIBBERT'S friend "coming in and having a table, but you need to stay there and drink with him and try to get him to spend more money." Plaintiff had no choice but to say okay.

33. Plaintiff then went to the table of HIBBERT'S friend at El Hefe and started drinking with him and his friends for a while, until HIBBERT'S friend and his friends decided that they were ready to leave El Hefe and move on to a different venue.

34. Plaintiff had no choice but to go with them to a different venue. At that point, they were all pretty drunk, including Plaintiff, who had been drinking a lot because they were telling her that she needed to catch up.

35. The entire group then went to Dakota bar, in Scottsdale. They all had a few more drinks, and Plaintiff realized that she was pretty drunk.

36. HIBBERT'S friend told her to come after-partying with them, and to hang out with them.

37. Plaintiff was planning on having an Uber driver take her all the way back home to Chandler. However, HIBBERT'S friend, REZWAN MANJII, told Plaintiff that if she stayed with them and went to an after party with them, and hung

out with them, he would help her and get her an Uber home so that Plaintiff didn't have to pay for it. Plaintiff agreed to that because it made the most sense.

38. Yet, Defendant ordered an Uber driver and instructed the driver to take them back to Defendant's house.

39. After arriving at the house, HIBBERT'S friend became sexually aggressive with Plaintiff, who said no and refused to have sexual relations. Plaintiff told HIBBERT'S friend she had her monthly menstrual period and that she did not feel comfortable. She wanted to go to her home.

40. HIBBERT'S friend grabbed Plaintiff's head and began smashing her head against the wall while holding the back of her neck. He did this at least three times, causing extreme pain. Plaintiff became dizzy and felt the pain. Then she blacked out.

41. During that night, Plaintiff did go in and out of consciousness a few times, but she could not see anything. When she awoke the next day, she had no clothes on and had her menstrual blood all over her. She had been raped by Defendant. Her head hurt really bad, and she was extremely distressed about what had occurred.

42. She left Defendant's home and went to Urgent Care, where she was diagnosed with a concussion.

43. Subsequently Plaintiff filed a complaint for battery against HIBBERT's friend in the State Court.

44. Upon learning about the case, Defendants substantially cut Plaintiff's shifts and even moved Plaintiff to work at another bar location – Cake night club, owned by Riot Hospitality Group.

45. Thereafter Cake night club was shut down, at which time Plaintiff was transferred back to El Hefe, however with a substantial reduction in work hours, which reduction constituted an adverse job action.

46. On August 31, 2017, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the EEOC).

47. Plaintiff complained to the EEOC as follows:

"In or around November 2015, I was employed as a Bartender/Server by the above employer. Starting around January 1, 2016 Owner Ryan Hibbert would require me to drink with him while I was working. He would touch my butt, take me to get massages during my shift and had sexual relations with me. The owner would try to get me to leave work with him. My manager would text me at night and ask me to come over or go somewhere with him. If I refused, he would cut my hours. In August 2017, the owner's wealthy friend requested that my manager cut me from my duties so I could join him and his friends to drink at their table. My manager had me join them. I would get paid for working if a big spender requested me and I spent time with him. We left and went to his house and when I said I didn't want to have sex, he got very aggressive and smashed my head in to the wall. I ended up with a concussion and was out of work for a few days. When I returned to work, I was still not feeling well and my hours were cut because my manager said I didn't show enough energy. He warned me that I would be written up if my energy level didn't change. I was put on the worse shift. I believe that he was afraid that I was going to go to the police about what the owner's best friend did to me so he was trying to get me to quit and go away. On or around August 25, 2017, my manager had a meeting with employees stating that the servers needed to continue to build outside relations with regular clients and "big spenders" and if it made anyone uncomfortable that they need to quit and find a new job. He said the servers should go out to dinner with them and it will start affecting our shift time if we don't. He said the servers were not servers they were sales people."

48. On September 15, 2017, the EEOC has concluded the investigation and issued a notice of Right to Sue on September 15, 2017.

49. All procedural and/or administrative prerequisites and/or conditions precedent to filing a legal claim against Defendants have been met.

## COUNT I – SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

50. Plaintiff repeats, re-alleges and incorporates herein by this reference the allegations contained in paragraphs 1-50.

51. Plaintiff is a member of protected class, female.

52. RIOT HOSPITALITY GROUP, LLC had 15 or more employees in the current or preceding calendar year.

53. Defendants RIOT HOSPITALITY GROUP, LLC, RHG VENTURES, LLC, through its employee Eric Sanchez and its principal Ryan Hibbert, engaged in unlawful employment practices in violation of Title II, 42 U.S.C. §2000e-2 by sexually harassing Alyssa Jones.

54. The sexual harassment by Ryan Hibbert included:

A. Asking Plaintiff to "hang out" with him;

B. Demanding Plaintiff to drink in excess with him;

C. Requiring Plaintiff to hang out and go to dinners with potential and actual customers as a condition of her continued employment.

D. Insisting that she be cut from her shift so that she could participate in a "spa day" with him and have a couple's massage, during which HIBBERT was completely naked;

E. Persistently touching her on her buttocks;

F. Forcing her to perform oral sex on him at the company's holiday party.

55. The sexual harassment by Eric Sanchez included:

A. Requiring Plaintiff to hang out and go to dinners with potential and actual customers as a condition of her continued employment

B. Requiring Plaintiff to go out with him

56. Plaintiff found these actions extremely offensive.

57. This behavior was unwelcome and created a hostile work environment for Plaintiff.

58. Defendants made the offensive acts and requests conditional on Plaintiff's employment.

59. As a direct and proximate result of the sexual harassment by Defendants, Plaintiff suffered damages that are compensable under Title VII.

60. RIOT HOSPITALITY GROUP, LLC and RHG VENTURES, LLC are vicariously liable for the acts of its agents.

61. Defendants' acts were sufficiently severe to alter the conditions of Plaintiff's employment.

**COUNT II – ACRA VIOLATIONS (Sexual Harassment and Retaliation)**

62. Plaintiff repeats, re-alleges and incorporates herein by this reference the allegations contained in paragraphs 1-60.

63. RIOT HOSPITALITY GROUP, LLC is an "employee" within the meaning of the Arizona Civil Rights Act, A.R.S. §§41-1461 *et seq.* (the ACRA).

64. During the course of her employment, Plaintiff has been subject to hostile and offensive work environment because of her sex, including harassment, humiliation, intimidation and sexual touching.

65. Acquiescence to Defendants' conduct and requests was a condition to Plaintiff's continued employment, which constitutes *quid pro quo* sexual harassment in violation of A.R.S. §41-1463.

66. RIOT HOSPITALITY GROUP, LLC and RHG VENTURES, LLC are vicariously liable for the acts of its agents.

67. Plaintiff suffered an adverse consequence, such as reduction in hours and shifts as a result of her non-following of El Hefe's policy to hang out and go to dinners with El Hefe's customers.

68. As a direct and proximate result of the conduct by Defendants in violation of the ACRA, Plaintiff suffered damages.

## COUNT III – RETALIATION IN VIOLATION OF TITLE VII

69. Plaintiff repeats, re-alleges and incorporates herein by this reference the allegations contained in paragraphs 1-68.

70. Defendants engaged in unlawful employment practices in violation of Title VII's prohibitions against retaliation by taking adverse employment actions against Plaintiff.

71. Upon learning that Plaintiff filed a suit against HIBBERT's friend, which was and is contrary to El Hefe's policy to hang out and go to dinners with El Hefe's customers, Defendants retaliated by substantially cutting Plaintiff's hours and shifts.

72. Such reduction of hours and shifts occurred almost immediately after Plaintiff refused to obey El Hefe's policy of fraternizing with and soliciting of the customers.

73. As the result of forgoing retaliation, Plaintiff suffered damages.

## COUNT IV – SEXUAL BATTERY
### (Against Ryan Hibbert individually)

74. Plaintiff repeats, re-alleges and incorporates herein by this reference the allegations contained in paragraphs 1-74.

75. Defendant HIBBERT intentionally caused offensive bodily contact with Plaintiff on several occasions, which offended her reasonable sense of personal dignity.

76. HIBBERT acted in reckless or wanton disregard of Plaintiff's rights, entitling her to an award of punitive damages.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Ryan Hibbert individually)

77. Plaintiff repeats, re-alleges and incorporates herein by this reference the allegations contained in paragraphs 1-77.

78. Defendant engaged in extreme and outrageous conduct

79. Defendant's extreme and outrageous conduct intentionally or recklessly caused emotional distress to Plaintiff.

80. As a direct and proximate result of Defendant's intentional infliction of emotional suffering, Plaintiff has suffered mental anguish and emotional distress.

**WHEREFORE**, Plaintiff ALYSSA JONES, respectfully prays for judgment against the Defendants, as follows:

1. For Plaintiff's compensatory damages;
2. For Plaintiff's damages for mental anguish and emotional distress;
3. For Punitive Damages;
4. For Plaintiff's economic damages, *i.e.* lost wages and other earnings (such as lost tips) as the result of Plaintiff reduction in hours and shifts;
5. For Plaintiff's attorney's fees, costs and pre- and post-judgment interest; and
6. For such other and further relief as this Court may deem just and proper.

DATED this 13th day of December, 2017.

ALYSSA JONES

/s/Philip J. Nathanson

By: _____
Plaintiff's Attorney

Philip J. Nathanson (AZ Bar #013624)
THE NATHANSON LAW FIRM
8326 E. Hartford Drive, SUITE 101
SCOTTSDALE, AZ 85255
(480) 419-2578
(480) 419-4136-Fax
philipj@nathansonlawfirm.com