Philip J. Nathanson (Arizona State Bar #013624)
Kate Sokolova (Arizona State Bar #032559)
**THE NATHANSON LAW FIRM**
8326 E. Hartford Dr., Suite 101
Scottsdale, AZ 85255
Phone Number: (480) 419-2578
Fax Number: (480) 419-4136
philipj@nathansonlawfirm.com
kate.sokolova@nathansonlawfirm.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## ARIZONA DISTRICT

| | |
|---|---|
| Alyssa Jones, | Case No. **2:17-CV-04612-BSB** |
| Plaintiff, | |
| vs. | **FOURTH AND FINAL AMENDED COMPLAINT** |
| Riot Hospitality Group, LLC n/k/a Noatoz LLC; RHG Ventures, LLC; 4425 Saddlebag, LLC; 4425 Saddlebag 2 LLC; JW Bar, LLC; Milo Companies, LLC; Rooke, LLC; MRM Hospitality, LLC; Ryan Hibbert, individually and in his official capacity | **(Jury Trial Demanded)**<br><br>**Assigned to Hon. Murray Snow** |
| Defendant | |

Plaintiff, Alyssa Jones, by her attorneys, Philip J. Nathanson and The Nathanson Law Firm, complains against the Defendants, Riot Hospitality Group n/k/a Noatoz, LLC, LLC, RHG Ventures, LLC, 4425 Saddlebag, LLC, 4425 Saddlebag 2, LLC, JW Bar, LLC, Milo Companies, LLC, Rooke, LLC, MRM Hospitality, LLC (collectively Riot Hospitality Group), and Ryan Hibbert, individually and in his official capacity, and alleges as follows:

  1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 451, 1331 and 1343. This action is authorized and instituted pursuant to (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. Section 2000e-5(f)(1); (2) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a; (3) Arizona Civil Rights

Act, A.R.S. §§41-1461 *et seq.* (the ACRA); and (4) Arizona State Common Law claim on sexual battery.

2. Venue is proper in this district pursuant to 28 U.S.C. §1391.

3. The employment practices and sexual battery alleged to be unlawful were committed within the County of Maricopa, State of Arizona.

4. Defendant Riot Hospitality Group, LLC is an Arizona limited liability company having its principal place of business within the State of Arizona, County of Maricopa for purposes of jurisdiction and venue.

5. Defendant Riot Hospitality Group, LLC changed its name to Noatoz, LLC on September 12, 2018.

6. Defendant Noatoz, LLC is an Arizona limited liability company having its principal place of business within the State of Arizona, County of Maricopa for purposes of jurisdiction and venue.

7. Noatoz, LLC is one of the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group.

8. Defendant RHG Ventures, LLC is a member of Riot Hospitality Group, LLC n/k/a Noatoz, LLC and is an Arizona limited liability company having its principal place of business within the State of Arizona, County of Maricopa for purposes of jurisdiction and venue.

9. Defendant RHG Ventures is one of the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group.

10. Defendant 4425 Saddlebag, LLC is an Arizona limited liability company having its principal place of business within the State of Arizona, County of Maricopa for purposes of jurisdiction and venue.

11. Defendant 4425 Saddlebag, LLC is one of the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group.

12. Defendant 4425 Saddlebag 2, LLC is an Arizona limited liability company having its principal place of business within the State of Arizona, County of Maricopa for purposes of jurisdiction and venue.

13. Defendant 4425 Saddlebag 2, LLC is managed by Riot Hospitality Group, LLC n/k/a/ Noatoz, LLC and its original member was RHG Ventures LLC.

14. Defendant 4425 Saddlebag 2, LLC is one of the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group.

15. On March 27, 2018 Defendant 4425 Saddlebag 2, LLC changed its member from RHG Ventures LLC to Rooke, LLC.

16. Defendant JW Bar, LLC is an Arizona limited liability company having its principal place of business within the State of Arizona, County of Maricopa for purposes of jurisdiction and venue.

17. Defendant JW Bar, LLC is a member managed LLC, whose sole member is Jon Wright Trust.

18. Defendant JW Bar, LLC is one of the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group.

19. Defendant Milo Companies, LLC at the time of the events was an Arizona limited liability company having its principal place of business within the State of Arizona, County of Maricopa for purposes of jurisdiction and venue.

20. Upon information and belief, on September 19, 2018 Defendant Milo Companies LLC changed its registration and moved its place of residence to Nevada.

21. Upon information and belief, Defendant Milo Companies LLC continues to do business in the State of Arizona and is managed by Defendant Ryan Hibbert.

22. Defendant Milo Companies, LLC is one of the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group.

23. Defendant Rooke LLC at the time of the events was an Arizona limited liability company having its principal place of business within the State of Arizona, County of Maricopa for purposes of jurisdiction and venue.

24. Upon information and belief, Defendant Rooke, LLC moved its place of residence to the State of Delaware on February 28, 2018, and re-registered in the State of Arizona as a Foreign Company.

25. Defendant Rooke, LLC's original members were Ryan Hibbert, Michael Troyan and Jon Wright. In 2014 the members changed to Milo Companies, LLC, JW Bar, LLC and MRM Hospitality, LLC.

26. Defendant Rooke, LLC is one of the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group.

27. Defendant MRM Hospitality, LLC is an Arizona limited liability company having its principal place of business within the State of Arizona, County of Maricopa for purposes of jurisdiction and venue.

28. Defendant MRM Hospitality, LLC is owned and managed by Michael Troyan.

29. Defendant MRM Hospitality, LLC is one of the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group.

30. Upon information and belief, all corporate Defendants are all operated as part of, and grouped under, the Riot Hospitality Group tradename and operate from the same place of business, 7525 E Camelback Rd. #100, Scottsdale, AZ 85251.

31. Defendant Ryan Hibbert is a citizen of Maricopa County, Arizona. At all times relevant to this Complaint, Defendant, Ryan Hibbert was a principal in Riot Hospitality Group, LLC Defendant. Mr. Hibbert owned operated and managed El Hefe, and was the person in charge of all operations.

32. El Hefe is owned, operated and managed by one or more Defendants comprising Riot Hospitality Group.

33. Plaintiff, Alyssa Jones, has worked as a cocktail waitress at the El Hefe Super Macho Taqueria, in Scottsdale, Arizona ("El Hefe"), from November of 2015 to February 6, 2018. Plaintiff lives in Chandler, Arizona.

34. At all relevant times, Riot Hospitality Group and the above referenced entities that form a single integrated enterprise therewith, has continuously been an employer within the meaning of Title VII of the Civil Rights Act of 1964.

35. At all times Plaintiff, Alyssa Jones, performed her job satisfactory.

36. Plaintiff was hired approximately three years ago by Defendant Hibbert to work at El Hefe in Scottsdale.

37. After Plaintiff started working at El Hefe, Defendant Hibbert would deliberately come around to the area where Plaintiff was working and would interact with Plaintiff during her shifts at El Hefe, asking her in the course of doing so if she would "hang out" with him.

38. Thereafter, at two company parties, Defendant Hibbert insisted that Plaintiff drink to excess and be with him.

39. After one of these episodes, Mr. Sanchez, Plaintiff's supervisor, gave Plaintiff a ride home, and began to socialize with her. Mr. Sanchez ingratiated himself with Plaintiff by giving her better shifts at work so she could socialize with him.

40. When Plaintiff refused to continue socializing with Mr. Sanchez, he began to take away Plaintiff's shifts at work and impose on Plaintiff other adverse employment actions.

41. Defendants Hibbert and Mr. Sanchez sexually harassed Plaintiff by requesting that Plaintiff and her co-workers (other cocktail waitresses) hang out with potential and actual customers who spent a lot of money drinking expensive bottles of wine and champagne, so those customers would want to come to El Hefe and consume such high-priced liquor.

42. Defendants Hibbert and Mr. Sanchez requested Plaintiff and her co-workers, all the time, to go to dinner with her regular customers and big spenders so that Plaintiff could get them to come back to El Hefe and book tables with her.

43. During the 2015 Christmas party a Dierks Bentley's Whiskey Row bar Hibbert forced Plaintiff into performing oral sex on him in order to keep her job.

44. Sometime around January or February of 2016, Hibbert came to El Hefe and cut Plaintiff from work (took her off the working shift) and told her that they were going to go get massages. Plaintiff had no choice but to agree to Hibbert's instruction.

45. Hibbert then took Plaintiff to Omni Scottsdale Resort & Spa at Montelucia. When Plaintiff entered the massage room she observed Hibbert being completely naked. Plaintiff felt very uncomfortable in light of the situation and informed Hibbert several times that she needed to go back to work. However, Hibbert did not take Plaintiff to work upon her request.

46. On the evening of August 4, 2017, Plaintiff was working at El Hefe.

47. On the evening of August 4, 2017, a good friend of Hibbert, Rezwan Manji was a customer of El Hefe, consuming alcohol.

48. Defendant Hibbert and Mr. Sanchez encouraged Plaintiff to socialize with customers like Hibbert's Friend, who came in and spend a lot of money buying and drinking alcohol.

49. After Plaintiff had already been working the dinner shift for a couple of hours, Hibbert's Friend tried to grab Plaintiff and told her that it was his friend Steve's birthday, and he wanted to get a table and have Plaintiff join them. Plaintiff was working and did not respond right away.

50. Shortly thereafter, Plaintiff received a text message from Hibbert's Friend saying that she had snubbed him and didn't give him attention.

51. Subsequently, Plaintiff's manager, and a couple of the other servers came up to her, asking her what did she do, because Hibbert's Friend left El Hefe and did not spend a lot of money, as he otherwise would have, but for Plaintiff's "rude" behavior towards him.

52. Plaintiff's manager then instructed Plaintiff that she needed to text Hibbert's Friend and try to make things better, and try to get him to come back to El Hefe and spend money.

53. Plaintiff followed manager's instructions, texted Hibbert's Friend and apologized. Hibbert's Friend responded by asking Plaintiff to encourage him to come back to El Hefe, which she did, because of what her manager told her to do. Then Hibbert's Friend came back to El Hefe. They purchased a table and started to purchase some champagne.

54. Hibbert's Friend then went up to one of Plaintiff's bosses and told him that he wanted Plaintiff to be cut immediately, meaning that she would be taken off the work shift that night so she could go drink with Hibbert's Friend and his friends.

55. Plaintiff's boss said okay because Hibbert's Friend was Hibbert's best friend, and he spent a lot of money at El Hefe.

56. Plaintiff's boss and manager pulled her outside and told her that: "We are cutting you. But you can't go home, you have to go drink with him. You'll still get paid for" Hibbert's Friend's "coming in and having a table, but you need to stay there and drink with him and try to get him to spend more money." Plaintiff had no choice but to say okay.

57. Plaintiff then went to the table of Hibbert's Friend, at El Hefe and started drinking with him and his friends for a while, until Hibbert's Friend and his friends decided that they were ready to leave El Hefe and move on to a different venue.

58. Plaintiff had no choice but to go with them to a different venue. At that point, they were all pretty drunk, including Plaintiff, who had been drinking a lot because they were telling her that she needed to catch up.

59. The entire group then went to Dakota bar, in Scottsdale. They all had a few more drinks, and Plaintiff realized that she was pretty drunk.

60. Hibbert's Friend told her to come after-partying with them, and to hang out with them.

61. Plaintiff was planning on having an Uber driver take her all the way back home to Chandler. However, Hibbert's Friend told Plaintiff that if she stayed with them and went to an after party with them, and hung out with them, he would help her and get her an Uber

home so that Plaintiff didn't have to pay for it. Plaintiff agreed to that because it made the most sense.

62. Yet, Hibbert's Friend ordered an Uber driver and instructed the driver to take them back to Hibbert Friend's house.

63. After arriving at the house, Hibbert's Friend became sexually aggressive with Plaintiff, who said no and refused to have sexual relations. Plaintiff told Hibbert's Friend she had her monthly menstrual period and that she did not feel comfortable. She wanted to go to her home.

64. Hibbert's Friend grabbed Plaintiff's head and began smashing her head against the wall while holding the back of her neck. He did this at least three times, causing extreme pain. Plaintiff became dizzy and felt the pain. Then she blacked out.

65. During that night, Plaintiff did go in and out of consciousness a few times, but she could not see anything. When she awoke the next day, she had no clothes on and had her menstrual blood all over her. She had been raped by Hibbert's Friend. Her head hurt really bad, and she was extremely distressed about what had occurred.

66. She left Hibbert's Friend's home and went to Urgent Care, where she was diagnosed with a concussion.

67. Subsequently Plaintiff filed a complaint for battery against Hibbert's Friend in the State Court.

68. On August 31, 2017, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the EEOC) against Riot Hospitality Group, which includes all of the Defendant entities comprising the single integrated enterprise known as the Riot Hospitality Group.

69. Plaintiff complained to the EEOC as follows:

> "In or around November 2015, I was employed as a Bartender/Server by the above employer. Starting around January 1, 2016 Owner Ryan Hibbert would require me to drink with him while I was working. He would touch my butt, take

me to get massages during my shift and had sexual relations with me. The owner would try to get me to leave work with him. My manager would text me at night and ask me to come over or go somewhere with him. If I refused, he would cut my hours. In August 2017, the owner's wealthy friend requested that my manager cut me from my duties so I could join him and his friends to drink at their table. My manager had me join them. I would get paid for working if a big spender requested me and I spent time with him. We left and went to his house and when I said I didn't want to have sex, he got very aggressive and smashed my head in to the wall. I ended up with a concussion and was out of work for a few days. When I returned to work, I was still not feeling well and my hours were cut because my manager said I didn't show enough energy. He warned me that I would be written up if my energy level didn't change. I was put on the worse shift. I believe that he was afraid that I was going to go to the police about what the owner's best friend did to me so he was trying to get me to quit and go away. On or around August 25, 2017, my manager had a meeting with employees stating that the servers needed to continue to build outside relations with regular clients and "big spenders" and if it made anyone uncomfortable that they need to quit and find a new job. He said the servers should go out to dinner with them and it will start affecting our shift time if we don't. He said the servers were not servers they were sales people.

70. Upon filing the complaint with the EEOC, Plaintiff's work conditions became intolerable.

71. As the result of Plaintiff's EEOC complaint, Defendants substantially cut Plaintiff's shifts and even moved Plaintiff to work as at another location – Cake night club, owned by Riot Hospitality Group.

72. Thereafter, Cake night club was shut down, at which time Plaintiff was transferred back to El Hefe, however with a substantial reduction in work hours, which reduction constituted an adverse job action.

73. Defendants' management employees were constantly humiliating and threatening Plaintiff.

74. Plaintiff's managers began raising their voices at Plaintiff.

75. Defendants' management made threatening comments, such as "you are skating on a thin ice."

76. Managers began to humiliate Plaintiff by assigning her work that she had never been assigned before, nor was it part of Plaintiff's job duties.

77. Plaintiff's co-workers shoved Plaintiff into a computer, attempted to further reduce Plaintiff shift hours and withhold $50 from Plaintiff's pay.

78. Plaintiff was continuously harassed, threatened, humiliated and retaliated against up until Plaintiff could no longer tolerate such treatment and had to resign on or about February 6, 2018.

79. On September 15, 2017, the EEOC concluded its first investigation and issued a notice of a Right to Sue, a copy of which is attached as Exhibit 1.

80. On November 30, 2018, Plaintiff filed her Second Complaint with the EEOC alleging constructive discharge and retaliation as the result of the first EEOC filing.

81. EEOC completed its second investigation and issued a second right to sue letter on December 20, 2018, a copy of which is attached as Exhibit 2.

82. All procedural and/or administrative prerequisites and/or conditions precedent to filing Plaintiff's legal claims against Defendants have been met.

**Count I – Sexual Harassment in Violation of Title VII**
**(Against Corporate Defendants)**

83. Plaintiff repeats, re-alleges and incorporates herein by this reference the allegations contained in preceding paragraphs.

84. Plaintiff is a member of protected class, female.

85. Riot Hospitality Group and the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group had 15 or more employees in the current or preceding calendar year.

86. Defendants Riot Hospitality Group and the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group through its employee Eric Sanchez and its principal Ryan Hibbert engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. §2000e-2 by sexually harassing Alyssa Jones.

87. The sexual harassment by Ryan Hibbert included:

    A. Asking Plaintiff to "hang out" with him;

    B. Demanding Plaintiff to drink in excess with him;

    C. Requiring Plaintiff to hang out and go to dinners with potential and actual customers as a condition of her continued employment.

    D. Insisting that she be cut from her shift so that she could participate in a "spa day" with him and have a couple's massage, during which Hibbert was completely naked;

    E. Persistently touching her on her buttocks;

    F. Forcing her to perform oral sex on him at the company's holiday party.

88. The sexual harassment by Eric Sanchez included:

    A. Requiring Plaintiff to hang out and go to dinners with potential and actual customers as a condition of her continued employment

    B. Requiring Plaintiff to go out with him

89. Plaintiff found these actions extremely offensive.

90. This behavior was unwelcome and created hostile work environment for Plaintiff.

91. Defendants made the offensive acts and requests conditional on Plaintiff's employment.

92. As a direct and proximate result of the sexual harassment by Defendants, Plaintiff suffered damages that are compensable under Title VII.

93. Riot Hospitality Group and the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group are vicariously liable for acts of its agents.

94. Defendants' acts were sufficiently severe to alter the conditions of Plaintiff's employment.

### Count II – ACRA Violations (Sexual Harassment and Retaliation)
### (Against Corporate Defendants)

95. Plaintiff repeats, re-alleges and incorporates herein by this reference the allegations contained in preceding paragraphs.

96. Riot Hospitality Group and the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group is an "employee" within the meaning of the Arizona Civil Rights Act, A.R.S. §§41-1461 et seq. (the ACRA).

97. During the course of her employment, Plaintiff has been subject to hostile and offensive work environment because of her sex, including harassment, humiliation, intimidation and sexual touching.

98. Acquiescence to Defendants' conduct and requests was a condition to Plaintiff's continued employment, which constitutes *quid pro quo* sexual harassment in violation of A.R.S. §41-1463.

99. Riot Hospitality Group and the multiple entities comprising the single integrated enterprise known as the Riot Hospitality Group are vicariously liable for acts of its agents.

100. Plaintiff suffered an adverse consequence, such as reduction in hours and shifts, harassment, humiliation and transfer to a different venue (Cake) as a result of her filing EEOC Complaint on August 31, 2017.

101. As a direct and proximate result of the conduct by Defendants in violation of the ACRA, Plaintiff suffered damages.

### Count III – Retaliation in Violation of Title VII
### (Against Corporate Defendants)

102. Plaintiff repeats, re-alleges and incorporates herein by this reference the allegations contained in preceding paragraphs.

103. Defendants engaged in unlawful employment practices in violation of Title VII's prohibitions against retaliation by taking adverse employment actions against Plaintiff.

104. Plaintiff engaged in a protected conduct, such as filing a complaint with the EEOC and complaining to management.

105. Defendants continuously retaliated by substantially cutting Plaintiff's hours and shifts and subjected Plaintiff to intolerable working conditions, including threats, physical altercations, humiliation, harassment raising voices ~~and~~ at Plaintiff and transferring her to another venue.

106. The above referenced adverse retaliatory actions occurred after Plaintiff filed her EEOC Complaint.

107. As the result of forgoing retaliation, Plaintiff suffered damages.

### COUNT IV – Sexual Battery
### (Against Ryan Hibbert individually)

108. Plaintiff repeats, re-alleges and incorporates herein by this reference the allegations contained in preceding paragraphs.

109. Defendant Hibbert intentionally caused offensive bodily contact with Plaintiff on several occasions, which offended her reasonable sense of personal dignity.

110. Hibbert acted in reckless or wanton disregard of Plaintiff's rights, entitling her to an award of punitive damages.

### COUNT V – Intentional Infliction of Emotional Distress
### (Against Ryan Hibbert individually)

111. Plaintiff repeats, re-alleges and incorporates herein by this reference the allegations contained in preceding paragraphs.

112. Defendant engaged in extreme and outrageous conduct.

113. Defendant's extreme and outrageous conduct intentionally or recklessly caused emotional distress to Plaintiff.

114. As a direct and proximate result of Defendant's intentional infliction of emotional suffering, Plaintiff has suffered mental anguish and emotional distress.

**COUNT VI – Wrongful Termination/Constructive Discharge
in Violation of Title VII
(Against Corporate Defendants)**

115. Plaintiff repleads and realleges and incorporates herein by this reference the allegations contained in preceding paragraphs.

116. Plaintiff had been discriminated against and harassed on continuous basis up to February 6, 2018 by Defendants and their agents.

117. Plaintiff's working conditions became intolerable.

118. Any other reasonable person in Plaintiff's position would have felt compelled to resign.

119. Plaintiff resigned on February 6, 2018.

120. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages

**WHEREFORE**, Plaintiff Alyssa Jones, respectfully prays for judgment against Defendants as follows:

1. For Plaintiff's compensatory damages;
2. For Plaintiff's damages for mental anguish and emotional distress;
3. For Punitive Damages;
4. For Plaintiff's economic damages, i.e. lost wages and other earnings (such as lost tips) as the result of Plaintiff's reduction in hours and shifts and as a result of Plaintiff's Constructive Discharge
5. For Plaintiff's attorneys' fees, costs and pre- and post-judgment interest
6. For such other and further relief as this Court may deem just and proper

**DATED** this 17th day of May, 2019.

**ALYSSA JONES**

By: <u>*/s/Philip J. Nathanson*</u>
Philip Nathanson
Kate Sokolova
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2019, I electronically transmitted the attached document to the Clerk's office using CM/ECF System for filing, and transmitted a Notice of Service of Electronic Filing to the following CM/ECF registrants:

Christopher Thomas Curran, Esq. (ccurran@clarkhill.com)
Darrel Eugene Davis, Esq. (ddavis@clarkhill.com)
David I Weissman, Esq. (dweissman@clarkhill.com)
Sean Michael Carroll, Esq. (scarroll@clarkhill.com)
**Clark Hill PLC**
14850 N. Scottsdale Rd., Ste. 500
Scottsdale, AZ 85254

By: /s/ *Philip Nathanson*