**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alyssa Jones, | No. CV-17-04612-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Riot Hospitality Group LLC, et al., | |
| Defendants. | |

Before the Court are several motions brought by Defendants Riot Hospitality Group, LLC; RHG Ventures, LLC; 4425 Saddlebag, LLC; 4425 Saddlebag 2, LLC; Milo Companies, LLC; Rooke, LLC; and Ryan Hibbert ("Defendants").  These motions include (1) a Motion for Summary Judgment (Doc. 434), (2) a Motion for Sanctions re: Intentional Destruction of Evidence and Spoliation (the "Spoliation Motion") (Doc. 439), (3) a Motion for Sanctions for Plaintiff's and Plaintiff's Counsel's Violation of Order to Pay Fees and Costs (the "Nonpayment Motion") (Doc. 469), and (4) a Request for Leave to Respond to Separate Motion Reurging "Motion to Disqualify K.J. Kuchta and Digital Acuity" (Doc. 476).  For the following reasons, the Spoliation Motion is granted, and the Court dismisses this case.  All other pending motions are denied as moot.

## BACKGROUND

In November 2015, Alyssa Jones ("Plaintiff") was hired as a waitress and bartender at El Hefe, a nightclub in Scottsdale.  Plaintiff alleges that while she was employed at El

Hefe, she was sexually harassed by her supervisors.  (Doc. 99 at 10.)  Plaintiff filed an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC") on August 28, 2017.  (Doc. 439-1 at 46.)  Plaintiff filed her formal charge with the EEOC on August 31, 2017.  (Doc. 99 ¶ 68.)  She continued to be employed by El Hefe until February 2018, during which period she alleges that she was retaliated against for filing a charge and that she was ultimately constructively discharged.  (Doc. 99 ¶¶ 102–107, 115–120.)

## I.      Production of Text Messages in 2019

During discovery, Defendants sought to obtain a variety of text messages between Plaintiff and her friends and co-employees.[1]   Responding to Defendants' First Set of Interrogatories, Plaintiff indicated that she used an iPhone 7 Plus from December 2015 through October 2018.  (Doc. 439-1 at 58.)  Plaintiff submitted this phone for imaging by a third-party vendor on February 24, 2019.[2]   *Id.*  Plaintiff then produced the text messages extracted from her phone to Defendants.  On review of the messages, Defendants noted several gaps where Plaintiff abruptly ceased communicating with individuals with whom she had previously messaged on a near-daily basis.  (Doc. 439-1 at 65.)  In October 2019, Defendants issued a subpoena duces tecum directed to the third-party vendor seeking a complete image of Plaintiff's iPhone 7 Plus.  (Doc. 184 at 1.)  At a hearing on November 5, 2019, the parties agreed to narrow the scope of the subpoena and crafted a stipulation, which the Court granted on November 12, 2019.  (Doc. 228 at 1.)  Instead of seeking the complete image of Plaintiff's iPhone 7 Plus, the stipulated subpoena duces tecum sought only strings of text messages between Plaintiff and specific individuals, as well as any

---

[1] As this case is subject to the Mandatory Initial Discovery Pilot ("MIDP"), Plaintiff was under an affirmative duty to disclose all documents and electronically stored information that she possessed and believed might be relevant to the claims or defenses of any party.  (Doc. 3 at 7.)  The MIDP also required Plaintiff to supplement her initial disclosures "no later than 30 days after the information is discovered by or revealed to the party," *id.* at 6, whether the information disclosed was "favorable or unfavorable."  *Id.* at 4.  Therefore, Plaintiff was obligated to disclose most of the communications at issue in this order on her own initiative, and failed to do so.

[2] Plaintiff began using an iPhone XS Max in October 2018.  (Doc. 439-1 at 58.)  As is discussed further below, she never submitted that phone for imaging.

evidence that messages in those strings had been deleted. *Id.* at 1–5. Defendants ultimately received six spreadsheets from the vendor, containing data on Plaintiff's communications with each of the following: (1) El Hefe employees, (2) Elle Foster ("Ms. Foster"), (3) Ryan Hibbert, (4) Eric Sanchez, and (5) Shea Watson ("Ms. Watson").[3]   (Doc. 439 at 7.) Notably, both the spreadsheets for Plaintiff's communications with El Hefe employees and Ms. Foster contained a tab for "Deleted Chats." *Id.*

## II.   The 2020 Discovery Dispute

### A.   Defendants Seek to Obtain Plaintiff's Communications with Her Witnesses

In depositions conducted in late 2019, three of Plaintiff's witnesses—Ms. Foster, Ms. Watson, and Chelsea Myers ("Ms. Myers")—testified that they had exchanged text messages with Plaintiff about the case. (Doc. 286 at 7:7–13.) Defendants sought to obtain these text messages.[4]   Plaintiff originally represented on January 11, 2020 that she would produce the messages in question, but failed to do so. (Doc. 350 at 2.) The Court then ordered Plaintiff to produce the documents on January 31, 2020. *Id.* In response, "Plaintiff produced a PDF of undated screenshots of text messages that were not responsive to Defendants' request or compliant with the parties' [electronically stored information ("ESI")] protocol." *Id.* At this point, the Court ordered the parties to jointly retain a third-party forensic search specialist and ordered Plaintiff and her witnesses to submit their devices to that specialist for imaging. (Doc. 308 at 1.) Plaintiff filed an interlocutory appeal and moved to stay the Court's order.[5]   (Doc. 313 at 1.) Despite not yet having been granted a stay, Plaintiff and her witnesses refused to comply with the Court's order while the motion to stay was pending. The Court ultimately denied the motion to stay, granted

---

[3] The vendor produced two spreadsheets for Plaintiff's communications with Ms. Watson.

[4] Plaintiff had previously produced communications with these witnesses through the fall of 2018.

[5] The Ninth Circuit ultimately dismissed the appeal for lack of jurisdiction. *See Jones v. Riot Hosp. Grp. LLC*, No. 20-15407, 2022 WL 401329, at *1 (9th Cir. Feb. 9, 2022).

Defendants leave to subpoena the three witnesses "to produce their recent communications regarding Plaintiff's claims," and ordered Plaintiff to produce her phone to K.J. Kuchta ("Mr. Kuchta"), the parties' retained specialist, for imaging by August 17, 2020.  (Doc. 350 at 8–9.)  Plaintiff submitted an iPhone 11 Pro Max for imaging on August 17, 2020.  Both Ms. Watson and Ms. Myers submitted their cell phones, an iPhone X and an iPhone 11 respectively, for imaging in early September.

### B.    Ms. Foster Does Not Produce Her Phone

Ms. Foster was served with the subpoena on August 18, 2020.  (Doc. 360 at 2.)  At a hearing on September 22, 2020, Philip Nathanson ("Mr. Nathanson")—who was counsel to both Plaintiff and Ms. Foster—informed the Court that Ms. Foster could not comply with the subpoena because she had dropped her cell phone in the water.  (Doc. 376 at 7:25.)  The Court nevertheless ordered Ms. Foster to produce her cell phone to Mr. Kuchta by September 25, 2020, and warned that if she did not do so, she would be precluded from testifying at trial.  (Doc. 367 at 1.)  Ms. Foster did not produce her cell phone.  Instead, Plaintiff filed a declaration by Ms. Foster on September 26 in which Ms. Foster claimed that her cell phone had been knocked into a swimming pool by a golden retriever sometime around September 3, 2020, and that she was unable to repair the phone.  (Doc. 368-1 at 1.)

Defendants moved to exclude Ms. Foster's testimony.  (Doc. 371 at 1.)  On November 6, 2020, the Court ordered Ms. Foster to show cause why she should not be held in contempt for failing to produce her cell phone because even though she asserted that the phone was damaged, she did not explain why she could not produce the phone to the specialist in its damaged condition.  (Doc. 385 at 3.)  At the show cause hearing on November 13, 2020, Ms. Foster personally informed the Court that she did not produce her damaged phone because she could not locate it when she looked for it on September 24, 2020.  (Doc. 398 at 4:21–5:10.)  Because Ms. Foster's phone was lost, the Court concluded that it was impossible for Defendants "to adequately test the veracity of Ms. Foster or anything she might say in trial," and excluded her testimony.  *Id.*

## C.   Data From the Imaged Cell Phones Is Not Produced

Mr. Kuchta extracted data from Plaintiff's, Ms. Watson's, and Ms. Myers' devices and transmitted the data to Mr. Nathanson in September 2020.  However, Mr. Nathanson did not produce the text messages that Defendants sought to obtain.  As the Court recounted in an earlier order:

> After a hearing on September 22, 2020, the Court ordered "that the relevant documents and accompanying privilege logs from the cell phones belonging to Plaintiff Alyssa Jones, and Witnesses Chelsea Myers and Shea Watson must be produced to Defendants by October 22, 2020," warning that "if Plaintiff Alyssa Jones, or witnesses Chelsea Myers, Shea Watson, or Elle Foster do not comply with this order, they will be precluded from testifying at trial."  (Doc. 367.)  Plaintiff's Witnesses failed to comply with the Court's order.   On November 16, 2020, the Court ordered that "[t]he relevant documents and accompanying privilege logs from the cell phones belonging to Plaintiff Alyssa Jones, and witnesses Chelsea Myers and Shea Watson must be produced to Defendants by December 11, 2020."  (Doc. 396 at 2.)  It specified that "[n]o further extensions will be granted."  Plaintiff's Witnesses again failed to comply.  *Id.*  Mr. Nathanson did not produce the sorted documents to [Mr. Kuchta] as required until December 10, 2020 and instructed [Mr. Kuchta] not to disclose the communications until expressly authorized.  *Id.*

(Doc. 413 at 2.)  No documents were produced to Defendants until the Court ordered Mr. Kuchta to transmit all non-privileged documents directly to Defendants on March 2, 2021.  (Doc. 413 at 5.)

## D.   Plaintiff and her Counsel Are Sanctioned for the Delayed Production

In the same order where the Court ordered Mr. Kuchta to produce all nonprivileged records extracted from the devices that he imaged to Defendants, the Court also found Plaintiff and her counsel, Mr. Nathanson, jointly and severally liable for fees incurred by Defendants associated with "seeking Plaintiff's compliance with the Court's orders" for the period between March 25, 2020 and August 17, 2020.  (Doc. 413 at 3.)  Mr. Nathanson was found responsible for "Defendant's fees incurred after Plaintiff produced her device and [he] received access to her communications from the Specialist."  *Id.*  The Court assessed the relevant period as between December 11, 2020 and March 2, 2021, the date

of the order.  *Id.*  In a subsequent order ("the August 6 order"), the Court assessed $69,575.50 in fees and costs against Plaintiff and Mr. Nathanson: $21,855.50 against Plaintiff and Mr. Nathanson jointly and severally for the period between March 25, 2020 and August 17, 2020; $12,011.00 against Mr. Nathanson alone for the period between December 11, 2020 and March 1, 2021; and $35,709.00 against Plaintiff alone for the costs and fees of Mr. Kuchta while he was retained as the neutral specialist.  (Docs. 413 at 4; 433 at 8.)  Plaintiff and Mr. Nathanson were ordered to pay their respective sanctions within 90 days of August 9, 2021, or by November 8, 2021.  *Id.*

### E.   Defendants Seek Leave to File a Spoliation Motion

After reviewing the communications between Plaintiff, Ms. Watson, and Ms. Myers, Defendants sought and obtained leave to file a motion for sanctions because they believed Plaintiff and her witnesses had deleted records from the devices they produced.[6] (Doc. 416 at 2); (Doc. 419 at 1.)  As part of that motion, Defendants offer an expert report prepared by Mr. Kuchta, who they separately retained to conduct a spoliation analysis.  In his report, Mr. Kuchta examined the data that he extracted from the three cell phones and concluded that Plaintiff and her witnesses likely each deleted text messages from their cell phones.[7]  (Doc. 439-1 at 3.)

### F.   Plaintiff and Mr. Nathanson Do Not Pay the Sanctions Award

On November 8, 2021, Plaintiff and Mr. Nathanson filed a Motion to Stay Order Awarding Attorney Fees and Costs.  (Doc. 458 at 1.)  As this motion was filed without first obtaining leave from the Court, it was stricken.  (Doc. 460 at 1.)  On November 18, 2021, Defendants alerted the Court that Plaintiff and Mr. Nathanson had not paid the Court-ordered fees and costs as contemplated by Doc. 433.[8]  (Doc. 467 at 28.)  The Court

---

[6] In a prior order, the Court explicitly prohibited "both parties . . . from filing further motions without obtaining leave from the Court prior to filing.  If necessary, the parties may file a brief request for authorization to file a motion."  (Doc. 396).

[7] Mr. Kuchta's findings and conclusions are discussed in greater depth in the Discussion below.

[8] Defendants construed the Court's August 6 order to require payment by November 7, 2021, as the August 6 order was electronically docketed on August 9, 2020.  (Doc. 467

1  subsequently gave Defendants leave to file the Nonpayment Motion.  (Doc. 465 at 3);
2  (Doc. 469 at 1.)  On August 22, 2022, the Court heard oral argument on both the Spoliation
3  Motion and the Nonpayment Motion.

**DISCUSSION**

4
5  **I.      Legal Standard**

6          "Rule 37(e) was completely revised in 2015" and now "sets the standards for
7  sanctions arising from the spoliation of" electronically stored information ("ESI").  *Fast v.*
8  *GoDaddy.com LLC*, 340 F.R.D. 326, 334 (D. Ariz. 2022).  The revised Rule 37(e) provides
9  the exclusive authority for sanctioning the spoliation of ESI; courts may no longer rely on
10 inherent authority or state law "when deciding whether sanctions based on the loss of ESI
11 are appropriate."  *Mannion v. Ameri-Can Freight Sys. Inc.*, No. CV-17-03262-PHX-DWL,
12 2020 WL 417492, at *5 (D. Ariz. Jan. 27, 2020).

13         Under the rule, a party may be sanctioned if (1) ESI "that should have been
14 preserved in the anticipation or conduct of litigation is lost," (2) "because a party failed to
15 take reasonable steps to preserve it," and (3) the ESI "cannot be restored or replaced
16 through additional discovery."  Fed. R. Civ. P. 37(e).  After these prerequisites are satisfied,
17 the rule operates on two parallel tracks.  If a court finds that the loss of the ESI prejudiced
18 the non-spoling party, it "may order measures no greater than necessary to cure the
19 prejudice."  Fed. R. Civ. P. 37(e)(1).  However, if a court finds that the spoling party "acted
20 with the intent to deprive another party of the information's use in the litigation," the rule
21 authorizes the imposition of more serious sanctions, including an adverse inference, an
22 adverse inference jury instruction, or termination sanctions.  Fed. R. Civ. P. 37(e)(2); *see*
23 *also Burris v. JPMorgan Chase & Co.*, 566 F. Supp 3d 995, 1012 (D. Ariz. 2021).  The
24 applicable "standard of proof for spoliation sanctions is a preponderance of the evidence,"
25 *Fast*, 340 F.R.D. at 335, and "[t]he Court is the appropriate finder of fact on a Rule 37(e)
26 motion.  *Burris*, 566 F. Supp. 3d at 1012.

27
28 ─────────────────────
at 28.)   Because November 7 was a Sunday, Defendants treated Plaintiff and Mr.
Nathanson's payments as due on November 8.  *Id.*

1   **II.**    **Analysis**

2        **A.**    **Duty to Preserve**

Sanctions under Rule 37(e) are only proper if Plaintiff had a duty to preserve the ESI at issue. *Fast*, 340 F.R.D. at 336. To determine when the duty to preserve is triggered, Rule 37(e) draws on the common law. *Id.* The common-law "duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (quoting *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011)). Generally, a duty to preserve documents for future litigation arises "[a]s soon as a potential claim is identified." *Apple, Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)).

To bring her Title VII claims in federal court, Plaintiff was required to file a charge with the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 2000e-5. As part of that process, Plaintiff completed an intake questionnaire detailing the basis for her claims against Defendants, which the EEOC received on August 28, 2017. (Doc. 439-1 at 46.) Plaintiff was represented by counsel at the time. (Doc. 439-1 at 54.) At that point, Plaintiff was aware that she had potential claims against Defendants and had started the process by which she could eventually pursue those claims in federal court. Her duty to preserve relevant ESI therefore arose by August 28, 2017.

        **B.**    **Plaintiff's Alleged Spoliation**

Defendants argue Plaintiff is responsible for the loss of two broad categories of ESI. First, Defendants claim Plaintiff deleted text messages between "herself and multiple employees" of El Hefe from her iPhone 7 Plus, including 51 text messages sent between the dates of August 30, 2017 and July 9, 2018. (Doc. 439 at 7); (Doc. 439-1 at 74–76.) Second, Defendants argue that Plaintiff coordinated with her witnesses to delete text messages that they had sent each other about the case in 2019 and 2020. (Doc. 439 at 2.) The Court will address each category separately.

1. **iPhone 7 Plus Messages**

a. **El Hefe Employees**

The Deleted Chats tab for Plaintiff's communications with El Hefe employees indicates that 51 iMessage chats were deleted before Plaintiff submitted her phone for imaging by her third-party vendor.  (Doc. 439-1 at 74.)  For each message in question, the spreadsheet lists a "Start Date" and "Start Time."  *Id.*  The first message, 25185, has a start date of 8/30/2017 and a start time of 11:19:40 PM (UTC-6).  The final message has a start date of 7/9/2018 and a start time of 10:54:45 PM (UTC-6).  It is not clear from the briefing whether the start date and time refers to the date and time the message was sent, or the date and time the message was deleted.  Regardless, the spreadsheet indicates that Plaintiff's third-party vendor concluded that Plaintiff deleted messages between herself and El Hefe employees after her duty to preserve relevant ESI arose: If the start date and time refers to the time the messages were originally sent, they were necessarily deleted after August 28, 2017.  If the start date and time refers to when the messages were deleted, then the messages were likewise deleted after August 28, 2017.

Sanctions under Rule 37(e) are available because all three prerequisites are satisfied.  Because the messages between Plaintiff and her witnesses were sent or deleted while she still worked at El Hefe, they are potentially relevant to the merits of her retaliation claim as well as to Plaintiff's credibility.  Moreover, Plaintiff was under a duty to preserve relevant ESI at the time.  That some messages were deleted while other surrounding messages were not shows that she failed to take reasonable steps to comply with this duty.  And the Court finds that these messages cannot be restored or replaced through additional discovery.  Plaintiff deleted these messages five years ago.  There is no guarantee that the potential custodians of the deleted messages can be found or that they still have access to the text messages Plaintiff deleted in 2017 and 2018.  Moreover, any attempt at obtaining these messages would likely be prohibitively expensive at this point: It is unlikely that the potential custodians retain the original text messages, so costly forensic techniques would

likely be required.  And as is discussed at length below, forensic techniques are not guaranteed to recover all deleted messages.  The Court does not see the need to authorize extensive efforts to recover deleted messages when so much time has passed, and any authorized discovery is unlikely to produce the messages at issue.  *See* Fed. R. Civ. P. 37(e)(2), advisory committee notes to 2015 amendment (emphasizing that courts should weigh the proportionality of "efforts to restore or replace lost information" when considering whether this element has been satisfied).  Therefore, the Court finds by a preponderance of the evidence that all three prerequisites to sanctions under Rule 37(e) have been satisfied.

### b.    Elle Foster

The Deleted Chats tab for Plaintiff's communications with Ms. Foster shows that two messages between Plaintiff and Ms. Foster were deleted.  Here, both messages bear the same start date and time: 2/4/18 at 12:16 (UTC-7).  (Doc. 439-1 at 78.)  Therefore, whether they were sent or deleted on February 4, 2018, they were necessarily deleted after Plaintiff's duty to preserve ESI arose.  The messages are potentially relevant because Plaintiff designated Ms. Foster as a witness who was supposed to testify about employment practices at El Hefe and the treatment of female servers by Defendants.  (Doc. 439-1 at 88.) Defendants have also shown that the two deleted messages cannot be restored or replaced through additional discovery.  The only place other than Plaintiff's phone where those messages would have been stored was Ms. Foster's phone, but that phone has been lost. Nor has Plaintiff proposed that any additional discovery *could* unearth the missing messages.  Therefore, all prerequisites for sanctions under Rule 37(e) have been satisfied.

### c.    Rule 37(e)(2)

The Court must next consider whether sanctions are appropriate under Rule 37(e)(2).  That "requires a finding that Plaintiff deleted the [messages] with 'the intent to deprive' Defendants of their use in this litigation." *Fast*, 340 F.R.D. at 339 (quoting Fed. R. Civ. P. 37(e)(2)).  "[N]either the Rule itself nor the Ninth Circuit have provided a

1    definition of 'intent' in this context." *Aramark Mgmt, LLC v. Borgquist*, No. 8:18-cv-

2    01888-JLS-KESx, 2021 WL 864067, at *6 (C.D. Cal. Jan. 27, 2021) (quoting *Est. of*

3    *Moreno by & through Moreno v. Corr. Healthcare Cos.*, No. 18-CV-5171-RMP, 2020 WL

4    5740265, at *6 (E.D. Wash. June 1, 2020)).   It is clear, however, that a finding of

5    negligence, or even gross negligence, is insufficient to trigger the harsh penalties

6    envisioned by Rule 37(e)(2).   *See* Fed. R. Civ. P. 37(e)(2) advisory committee notes to

7    2015 amendment (noting that the rule "rejects cases . . . that authorize the giving of adverse-

8    inference instructions on a finding of negligence or gross negligence").

9          Courts confronted with the issue "have found that a party's conduct satisfies Rule

10   37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer[] that the

11   [] party purposefully destroyed evidence to avoid its litigation obligations." *Porter v. City*

12   *& Cnty. of San Francisco*, No. 16-cv-03771-CW(DMR), 2018 WL 4215602, at *3 (N.D.

13   Cal. Sept. 5, 2018); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust*

14   *Litig.*, --- F.R.D. ----, 2022 WL 1082087, at *8 (S.D.N.Y. Apr. 11, 2022).   Both direct and

15   circumstantial evidence may be considered in the inquiry.   *Fast*, 340 F.R.D. at 339

16   (collecting cases).   In finding intent based on circumstantial evidence, courts consider, *inter*

17   *alia*, "the timing of the destruction, the method of deletion (e.g., automatic deletion vs.

18   affirmative steps of erasure), selective preservation, the reason some evidence was

19   preserved, and, where relevant, the existence of institutional policies on preservation."

20   *Laub v. Horbaczevski*, No. CV 17-6210-JAK (KS), 2020 WL 9066078, at *6 (C.D. Cal.

21   July 22, 2020); *see also Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D.

22   Ala. 2017) (considering similar factors), *cited with approval in Fast*, 340 F.R.D. at 340.

23   

24         Here, the circumstantial evidence shows that Plaintiff deleted the messages from her

25   iPhone 7 Plus with the intent to deprive Defendants of their use in the litigation.   Plaintiff's

26   iPhone 7 Plus contained other messages to the same El Hefe employees throughout the

27   period where she deleted messages and as late as July 13, 2018.   (Doc. 473-4 at 362.)   Her

28   phone also contained messages to Ms. Foster as late as August 12, 2018, six months later

than the two deleted texts dated in February 2018.  (Doc. 473-4 at 402.)  Drawing reasonable inferences from the circumstances, the Court concludes that Plaintiff affirmatively chose to erase the messages.  Plaintiff does not indicate that her iPhone 7 Plus had any protocols to delete text messages regularly or automatically, further supporting a finding that she chose to delete the messages.  And because Plaintiff had been advised by counsel since at least August 2017, she either knew or should have known that she had a duty to preserve messages relevant to the case at all relevant times.  *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (district court's finding that plaintiff intentionally deleted documents was not clearly erroneous when plaintiff knew he was under duty to preserve but affirmatively deleted files), *superseded by rule as stated in Fast*, 340 F.R.D. at 353 n.16; *In re Keurig*, 2022 WL 1082087, at *8 (finding evidence that spoliating party deleted ESI "while it knew or should have known of its duty to preserve the evidence" relevant to the Rule 37(e)(2) inquiry).  As Plaintiff does not offer any justification for why these messages were deleted but others were not, it is reasonable to infer that she deleted these messages with intent to deprive Defendants from using them in the litigation.

### 2.    The Devices Imaged in 2020

Defendants also argue sanctions are appropriate because Plaintiff and her witnesses deleted text messages that they sent each other between early 2019 and August 2020.  The basis for their argument is an analysis conducted by Mr. Kuchta.  Although Mr. Kuchta was originally retained as a third-party forensic neutral, he was subsequently retained by Defendants to prepare a report for their spoliation motion after Defendants received the data that he extracted from the three devices.[9]  (Doc. 473-7 at 18.)  Because Defendants

---

[9] Contrary to Plaintiff's argument, Mr. Kuchta is not a special master appointed under Rule 53.  (Doc. 473 at 6.)  Mr. Kuchta was retained by Plaintiff and Defendants after the Court ordered the parties to consult and jointly retain a specialist who would assist them with the ESI issues in this case.  (Doc. 308 at 1.)  The Court did not invoke Rule 53 in its order.  Plaintiff offers no authority that precludes Defendants from separately retaining Mr. Kuchta to conduct an analysis of the data extracted from the imaged cell phones.  While the Court would have preferred Defendants seek leave of Court prior to separately retaining Mr. Kuchta, his separate retention appears legally permissible, especially in light of his previous familiarity with the data at issue, and the extraordinary expense incurred by

had relied on Mr. Kuchta's expert opinion in crafting their motion for sanctions, the Court permitted Plaintiff to depose Mr. Kuchta and retain her own expert to oppose Mr. Kuchta's conclusions.[10]   Plaintiff deposed Mr. Kuchta in December 2021 but did not submit an expert report with her response to Defendants' motion.

### a.   The Devices

Mr. Kuchta ultimately imaged three cell phones in mid-2020: (1) an iPhone 11 Pro Max belonging to Plaintiff, (2) an iPhone X belonging to Ms. Watson, and (3) and an iPhone 11 belonging to Ms. Myers.  (Doc. 439-1 at 4–5.)  Mr. Kuchta did not analyze Ms. Foster's cell phone because it was not produced for imaging.  Mr. Kuchta analyzed the text message data extracted from the three devices, examining communications between Plaintiff and the two remaining witnesses for signs that messages had been deleted.

As was the case with Plaintiff's iPhone 7 Plus, it is sometimes possible to determine that a text message has been deleted from a phone because even after the message's deletion, traces of the message remain on the phone.  But Mr. Kuchta did not uncover any traces suggesting that text messages had been deleted from the three phones.  According to Mr. Kuchta, when data is migrated to a new cell phone, any traces of deleted text messages stored on the old cell phone are not transferred to the new phone.  Plaintiff began using the iPhone 11 Pro Max on April 19, 2020, and Ms. Myers began using her iPhone 11 on June 4, 2020.[11]  (Doc. 439-1 at 4–5.)  Therefore, to the extent Plaintiff and Ms. Myers had deleted messages before April and June 2020, respectively, Mr. Kuchta could not have uncovered any traces of the deletions because they would not have been transferred to the new phones. As for Ms. Watson, Mr. Kuchta's analysis revealed that no text messages were found on

---

Defendants in obtaining the documents at issue from Plaintiff.

[10] Plaintiff's argument that Mr. Kuchta was inappropriately retained as an expert after the deadline for expert disclosures in this case is not well taken.  When the Court granted Plaintiff leave to depose Mr. Kuchta and retain a rebuttal expert, it reopened discovery for the limited purpose of presenting expert reports on the issue of spoliation. (Doc. 465 at 2.)

[11] Plaintiff ceased using her iPhone 7 Plus in October 2018, at which point she began using an iPhone XS Max.  (Doc. 439-1 at 58.)  Plaintiff never submitted her iPhone XS Max for imaging.

her phone between January 21, 2019 and August 17, 2020 (the date Plaintiff's cell phone was imaged), and that no traces of deleted messages could be retrieved.  (Doc. 439-1 at 7.)  Mr. Kuchta concludes that Ms. Watson either (1) used a different cell phone between January 2019 and August 2020, when she resumed using—and then submitted for imaging—the iPhone X, or (2) conducted a factory reset of her cell phone and restored it from a January 2019 backup file.  (Doc. 439-1 at 3.)

### b.    Methodology

As these issues prevented Mr. Kuchta from uncovering traces of deleted messages on any of the three devices, he states that the only way to ascertain whether Plaintiff and her two witnesses deleted messages on their old cell phones is to compare their text message history.  (Doc. 439-1 at 4–5, 7.)  He refers to this concept as asymmetric communication.  (Doc. 439-1 at 8.)  In short, Mr. Kuchta compared the outbound text messages on Plaintiff's phone to the messages that each witness's phone indicates were received, and likewise in the opposite direction.  If no messages were deleted from any phone, then the records should be symmetrical: All messages between Plaintiff and her witnesses should be contained on all relevant cell phones.  However, if messages were selectively deleted, then some messages would appear on one phone but not the other.  (Doc. 439-1 at 7–8.)  Because Ms. Watson's phone does not contain any text messages between January 21, 2019 and August 17, 2020, Mr. Kuchta was unable to determine whether Plaintiff deleted any specific text messages sent to Ms. Watson during that period because he could not compare records.

Mr. Kuchta identified several discrete instances where text messages were deleted by either Plaintiff or her witnesses and offers a broader conclusion that Plaintiff and her witnesses likely coordinated the deletion of messages containing adverse information from all relevant cell phones.[12]  (Doc. 439-1 at 25.)  In his experience, "when two custodians

---

[12] The Court will not exclude Mr. Kuchta's opinions under Federal Rule of Evidence 702.  Mr. Kuchta has decades of specialized technical experience in the field of computer forensics.  (Doc. 439-1 at 26.)  Given the complex technical issues posed by ESI discovery, his report will assist the Court in determining whether spoliation has taken place.  Moreover, his testimony is based on sufficient facts or data because it draws exclusively

collaborate to delete specific text messages and in particular, a large number of text messages, they often delete in unison the most egregious messages, but messages of no or minor importance are not as diligently deleted." (Doc. 439-1 at 8.)  Therefore, he concludes that whenever the text message logs between Plaintiff and her witnesses show asymmetric communication, it is highly likely that additional messages sent around the time of the apparent asymmetries were also deleted by both parties.

### c.    Plaintiff's Communications with Ms. Watson

### i.    Discrepancies

As for communications between Plaintiff and Ms. Watson, there were several discrepancies in the text message records on their respective phones.  Plaintiff's phone contained 164 text messages sent between Plaintiff and Ms. Watson on January 12, 2019, that were not on Ms. Watson's phone.  (Doc. 439-1 at 11–12.)  A message sent from Plaintiff to Ms. Watson at 12:36 AM on January 12, 2019, was not found on Ms. Watson's phone, but subsequent messages sent around 1:23 AM that day were present on both phones.  (Doc. 439-1 at 12.)  An additional 163 messages sent between 1:59 AM and 10:44 PM on January 12, 2019, were also missing from Ms. Watson's phone but were found on Plaintiff's phone.  (Doc. 439-1 at 12–13.)  No messages found on Ms. Watson's phone were missing from Plaintiff's phone.

There are no text messages on Ms. Watson's phone between January 21, 2019, and August 17, 2020.  (Doc. 439-1 at 13–14.)  During that period, Plaintiff's phone shows that Plaintiff continued to communicate with Ms. Watson through January 11, 2020.  (Doc. 439-1 at 14.)  For example, on October 12, 2019, Plaintiff sent Ms. Watson a screenshot of a text message from Ms. Foster that cannot be found in original form on Plaintiff's phone.

from the three cell phones that he imaged in this case.  And while Plaintiff argues that his methods are unreliable in theory and unreliably applied in this case, the Court disagrees. Mr. Kuchta's core methodological tool of comparing the respective message histories of two custodians to determine whether one custodian deleted messages sent to or received from the other custodian is intuitively sound, and this method was reliably applied in this case.  The Court will consider Mr. Kuchta's expert opinions.

On January 10, 2020, the parties first raised the issue of Plaintiff's text message conversations with her witnesses to the Court.  (Doc. 286 at 3.)  Immediately thereafter, from January 11, 2020, through August 17, 2020, neither phone contains evidence of communication between Plaintiff and Ms. Watson. (Doc. 439-1 at 14.)  After August 17—the day Plaintiff's iPhone 11 Pro Max was imaged—text messages between Plaintiff and Ms. Watson appear on Ms. Watson's phone for the first time in over a year and a half. (Doc. 439-1 at 14.)

Plaintiff does not challenge Mr. Kuchta's findings that (1) some messages were present on Plaintiff's phone that were not present on Ms. Watson's phone; (2) Ms. Watson's phone did not contain any evidence of communication with Plaintiff from January 2019 through August 17, 2020; (3) on October 12, 2019, Plaintiff sent Ms. Watson a screenshot of a text message from Ms. Foster that cannot be found in original form on Plaintiff's phone; and (4) neither Plaintiff's nor Ms. Watson's phone contained evidence of the two individuals communicating between January 11, 2020 and August 17, 2020. The Court considers these findings undisputed for purposes of its analysis.

### ii.    Conclusions

The Court finds that all three Rule 37(e) prerequisites are satisfied as to Plaintiff's communications with Ms. Watson as follows:

1.   Plaintiff deleted communications with Ms. Watson that were sent between January 11, 2020 and August 17, 2020.  The Court bases its finding on the following: (1) communications from Plaintiff to Ms. Watson that were deleted from Ms. Watson's cell phone; (2) the timing of the hiatus in the text conversations between Plaintiff and Ms. Watson, and (3) the volume of the cell phone traffic between Plaintiff and Ms. Watson both immediately before and immediately after the hiatus.  Ms. Watson's text message history with Plaintiff after the date her cell phone was imaged (August 17, 2020) is consistent in volume with the pre-January 11, 2020 conversation patterns between Plaintiff and Ms. Watson.  According to Mr. Kuchta, "[i]t is highly unlikely and improbable" that Plaintiff and Ms. Watson, who historically exchanged between up to 600 text messages per week,

would suddenly stop communicating for seven months. (Doc. 439-1 at 14.) In his opinion, it is likely that Plaintiff deleted all messages from or to Ms. Watson during the period between January 11, 2020 through August 17, 2020. (Doc. 439-1 at 16.)

The Court credits Mr. Kuchta's opinion in part. It is clear from the volume of messages before and after this period that Plaintiff and Ms. Watson kept communicating from January 11 through August 17. But any text messages that Plaintiff deleted after she began using her new phone on April 19, 2020 would have been recorded on Plaintiff's iPhone 11 Pro Max, even if Ms. Watson did in fact conduct a factory reset of her device on the day Plaintiff's device was imaged. As Defendants have not shown indicia that such deletions are present on Plaintiff's device, the Court declines to adopt Mr. Kuchta's theory that Plaintiff continued to send text messages to Ms. Watson after April 19, 2020 which Plaintiff subsequently deleted. However, due to the volume of communication that Plaintiff and Ms. Watson exchanged both before and after the period spanning January 11, 2020 and August 17, 2020, the Court concludes they nevertheless remained in contact and that records of their communications are not discoverable as they were not found on Plaintiff's iPhone 11 Pro Max. Therefore, the Court finds that Plaintiff deleted electronic communications with Ms. Watson sent between January 11, 2020 and August 17, 2020, which she was obliged to preserve, that she failed to take reasonable steps to preserve the messages, and that the messages are not recoverable by any alternative means

2. Plaintiff deleted communications with Ms. Watson that were sent between January 21, 2019 and January 11, 2020. Ms. Watson's phone does not contain any text messages during this period. When "one custodian deletes all of their text messages . . . the remaining custodians can delete any or all of their texts and only in rare occasions will forensic software be able to recover the deleted text." (Doc. 439-1 at 8.) For this reason, Mr. Kuchta was unable to definitely establish by traces in the cell phone that Plaintiff deleted any text messages in her conversation with Ms. Watson from January 21, 2019 through January 11, 2020. (Doc. 439-1 at 8.) Plaintiff argues that because Mr. Kuchta is unable to show how many text messages were deleted in her conversation with Ms. Watson

during this period, he cannot show that any messages were deleted.  But Plaintiff does not address why she began using the iPhone 11 Pro Max after the Court ordered her and her witnesses to provide their phones for imaging on March 4, 2020, nor does she offer her previous phone, an iPhone XS Max, for imaging or otherwise contest Mr. Kuchta's conclusion that any proof that messages were deleted from the older phone would not have been transferred to the new phone.[13]  In other words, Plaintiff effectively concedes that she took affirmative steps after the Court's order that had the ultimate effect of obliterating any trace of messages that she may have deleted from her conversation with Ms. Watson between January 21, 2019 and January 11, 2020.

Because Plaintiff deleted messages in 2020 and made it forensically impossible to determine whether messages in her conversation with Ms. Watson sent between January 21, 2019 and January 11, 2020 were deleted, the Court finds that she also deleted messages during this earlier period that are now unrecoverable.  These messages were likely relevant and subject to a duty to preserve that Plaintiff failed to take reasonable steps to comply with.

3.  Plaintiff deleted communications with Ms. Watson that were sent in early January 2019.  From the evidence of asymmetric communication during this period, Mr. Kuchta concluded that it is not only likely that Ms. Watson deleted messages from her cell phone, but that Plaintiff coordinated with Ms. Watson to delete additional unfavorable messages from both of their phones that were sent around the same time.  He opines that while Plaintiff opted to surgically delete specific messages sent on January 12, Ms. Watson deleted every message sent during the relevant period.  However, when Plaintiff subsequently transferred her data to the iPhone 11 Pro Max in April 2020, she destroyed any evidence that messages from this period were in fact deleted.  In light of the Court's other findings as to Plaintiff's communications with Ms. Watson, the Court credits Mr.

_____

[13] As discussed above, Plaintiff began using her new cell phone on April 19, 2020.

1   Kuchta's theory as to the evidence of asymmetric communication in early 2019 and

2   concludes that Plaintiff deleted messages between herself and Ms. Watson in January 2019.

3   For the same reasons as before, the Rule 37(e) prerequisites are satisfied as to those

4   messages as well.

### d. Plaintiff's Communications with Ms. Foster

6       Plaintiff's messages with Ms. Watson also reveal that Plaintiff received a message

7   from Ms. Foster that is not present on Plaintiff's cell phone in its original form.  On October

8   12, 2019, Plaintiff sent a screenshot of a message from an individual identified as "Elle"

9   with initials "EF" to Ms. Watson.[14]  The screenshot is a message addressed to "Alyssa"

10  and details Elle's concerns with testifying in a lawsuit against El Hefe.  (Doc. 439-1 at 15.)

11  However, the full text of the message was not preserved because the screenshot cuts the

12  message off mid-sentence.  Plaintiff does not contest Defendant's assertion that this

13  message was originally sent by Ms. Foster, and the Court agrees that the message was more

14  likely than not sent by Ms. Foster.  Mr. Kuchta was unable to locate the underlying message

15  from Ms. Foster on Plaintiff's phone.  Mr. Kuchta therefore concludes that Plaintiff likely

16  deleted text messages between herself and Ms. Foster.  (Doc. 439-1 at 16.)  The Court so

17  finds.

18      Ms. Foster's phone has not been produced for discovery, so Defendants cannot

19  obtain Plaintiff's communications with Ms. Foster by any alternative means.  Because at

20  least one message was untraceably deleted and only discovered through a chance partial

21  preservation in another conversation, the Court is skeptical that it was the only message to

22  or from Ms. Foster that Plaintiff deleted during this time period.[15]  Indicia of any other

23  deletions made during this period would have been obliterated once Plaintiff began using

24  her iPhone 11 Pro Max.  Plaintiff has not offered her older iPhone XS Max for imaging,

---

26      [14] Ms. Foster's deposition was first noticed on October 11, 2019.  (Doc. 186 at 1.)

27      [15] Plaintiff has also deleted messages with Ms. Foster before, as the Court
28  determined *supra*.

which would presumably contain indicia that could confirm that she only deleted one message from Ms. Foster, nor has she otherwise presented contrary analysis on this issue.[16] (Doc. 473 at 8.)  Therefore, the Court concludes that it is likely that Plaintiff deleted other messages during this period which have also become forever lost and untraceable.[17]  In sum, Plaintiff's deletion of her communications with Ms. Foster is sanctionable under Rule 37(e) as the Court finds by a preponderance of the evidence that she deleted an unknown number of messages from a material fact witness about the case that have not been preserved and cannot be produced through any additional discovery, that these messages were relevant and should have been preserved, and that she failed to take reasonable steps to preserve them.

### e.  Plaintiff's Communications with Ms. Myers

Mr. Kuchta identifies twelve messages that Plaintiff sent to Ms. Myers which he did not find on Plaintiff's phone.  The missing messages are as follows: Two on October 28, 2019, one on October 29, 2019, two on November 3, 2019, and seven sent between May 25 and May 30, 2020.  (Doc. 439-1 at 17–20.)  He also identifies one message that Plaintiff's phone received on May 30, 2020 from Ms. Myers which is not present on Ms. Myers' phone.  (Doc. 439-1 at 20.)  As with Ms. Watson, he surmises that Plaintiff and Ms. Myers collaborated to both delete discoverable and unfavorable text messages sent on those dates, but that Plaintiff deleted certain 'straggler' messages that Ms. Myers did not.  Plaintiff does not challenge these basic facts.  Because Plaintiff and Ms. Myers began using new cell phones **after** the Court ordered them to produce their cell phones for imaging, Mr.

---

[16] Even if Plaintiff produced her old iPhone for imaging, the phone would not contain the messages themselves, only the indicia that they were deleted.  Therefore, additional imaging of Plaintiff's iPhone XS Max would not lead to the production of the messages in question.

[17] The partial screen capture—likely sent soon after Ms. Foster's deposition was noticed—is clearly relevant because it relates to Ms. Foster's testimony in the case.  Other deleted messages would likely also be relevant.  *See Leon*, 464 F.3d at 959 ("[B]ecause 'the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist,' a party 'can hardly assert any presumption of irrelevance as to the destroyed documents.'" (quoting *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982))).

Kuchta is unable to determine whether more deletions took place before the new phones entered use.  (Doc. 439-1 at 4–5.)  Plaintiff, for her part, argues that because he is unable to show how many text messages were deleted before Plaintiff and Ms. Myers began using new cell phones, he cannot show messages were deleted.  (Doc. 473 at 8.)  But Plaintiff does not address why she and Ms. Myers began using new cell phones after the Court ordered her and her witnesses to provide their phones for imaging on March 4, 2020, nor does she offer the older phones for imaging or otherwise contest Mr. Kuchta's conclusion that any proof that messages were deleted from the older phones would not have been transferred to the new phones.[18]  In other words, Plaintiff effectively concedes that she and Ms. Myers took affirmative steps after the Court's order that had the ultimate effect of obliterating any trace of messages that she and Ms. Myers may have jointly deleted.

Nevertheless, as it pertains to after Plaintiff and Ms. Myers began using new iPhones, the Court finds that only the specified messages were deleted by Plaintiff.[19] Plaintiff appears to have deleted at least seven messages from her conversation with Ms. Myers in May 2020.  (Doc. 439-1 at 20.)  At that time, Plaintiff was communicating through the iPhone 11 Pro Max, which was subsequently imaged.  Had she and Ms. Myers conspired to jointly delete additional messages, the traces of any deleted messages should have been present on Plaintiff's device when it was imaged.  Mr. Kuchta did not recover any traces of deleted messages from Plaintiff's iPhone 11 Pro Max

The Court therefore finds that the Rule 37(e) prerequisites are satisfied as to messages that Plaintiff and Ms. Myers exchanged before April 19, 2020.  Crediting Mr. Kuchta's expert opinion, the Court concludes that Plaintiff and Ms. Myers jointly deleted messages during the periods where asymmetric communication exists, and that these messages are no longer recoverable.

---

[18] As discussed above, Plaintiff began using her new cell phone in April 2020 and Ms. Myers began using her iPhone 11 in June 2020.

[19] Unlike Ms. Watson, Ms. Myers's iPhone is not mysteriously blank for large periods of time in 2020.  Therefore, the Court declines to draw the inferences that it did with Ms. Watson.

### f.      Rule 37(e)(2)

Plaintiff's conduct is sanctionable under Rule 37(e)(2) because the Court finds by a preponderance of the evidence that she deleted the text messages with her witnesses intending to deprive Defendants of their use in the litigation.  Fed. R. Civ. P. 37(e)(2).  As all deleted messages were originally sent after the litigation commenced, Plaintiff deleted these messages long after she knew or should have known to preserve all relevant ESI.  And while much of the content of the deleted messages is unknowable, the Foster screenshot shows that Plaintiff deleted at least one message that had a direct bearing on her case.  Plaintiff does not argue that the text messages were inadvertently deleted, nor could she, as it is clear that she affirmatively selected certain text messages for deletion while otherwise preserving text messages sent around the same time.  Nor does she offer any explanation, let alone a credible one, for why she deleted messages notwithstanding her duty to preserve.  A finding that she intentionally deleted messages is therefore justified.  *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 499–500 (S.D.N.Y. 2016) (finding manipulation of ESI that could not be explained as accidental weighed in favor of finding intent under Rule 37(e)(2)); *Brown Jordan Int'l v. Carmicle*, No. 14-CV-60629, 2016 WL 815827, at *33–37 (S.D. Fla. Mar. 2, 2016) (finding intent to deprive where spoliating party did not credibly explain failure to preserve); *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017) (finding Rule 37(e)(2)'s intent requirement satisfied when evidence showed that the plaintiff emailed with former co-worker about the substance of her case, failed to take reasonable steps to preserve emails, "and/or . . . failed to produce these communications in violation of her discovery obligations," and that any deletions would have been made after her duty to preserve was triggered).

### C.      Sanction

Based on the foregoing, sanctions under Rule 37(e)(2) are warranted as Plaintiff intentionally deleted an unknowable number of messages between herself and her witnesses from the outset of the case through mid-2020.  Under the rule, the Court is

authorized to dismiss the case as a sanction, a result which Defendants urge.

Termination sanctions are generally "disfavored" and should be "imposed sparingly." *Burris*, 566 F. Supp. 3d at 1018. "Before imposing the 'harsh sanction' of dismissal, . . . the district court should consider the following factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990). "Therefore, it is the third and fifth factors that are decisive." *Id.* Additionally, while explicit findings on each factor are not required, "a finding of 'willfulness, fault, or bad faith' is required" before termination sanctions may be entered. *Leon*, 464 F.3d at 958. Finally, "[i]n evaluating the propriety of sanctions, . . . all incidents of a party's misconduct" should be examined. *Adriana*, 913 F.2d at 1411.

### 1.   Willful

Plaintiff's sanctionable discovery violations were willful or undertaken in bad faith. As for the spoliation of Plaintiff's messages with her witnesses, the Court determined Plaintiff intended to deprive Defendants of the use of these messages in this litigation. *See supra* Part II.B.2.f. Her violation of Rule 37(e)(2) was therefore willful and eligible for termination sanctions.

### 2.   Prejudice

The prejudice inquiry asks "whether the [spoliating party's] actions impaired [the non-spoliating party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (quoting *United States ex rel. Wiltec Guam, Inc. v. Kahuluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)). "Whether or not the documents would have changed the outcome of [a] trial is not the issue in determining

prejudice." *Anheuser-Busch*, 69 F.3d at 354.  "It is sufficient that [Plaintiff's] concealment of the documents clearly impaired [Defendants'] ability to go to trial and *threatened* to interfere with the rightful decision of the case." *Id.*  Moreover, delayed production of documents does not cure prejudice: The Ninth Circuit "has squarely rejected the notion that a failure to comply with the rules of discovery is purged by belated compliance." *Id.*

Plaintiff's deletion of an unknown number of messages from Ms. Watson, Ms. Myers, and Ms. Foster prejudiced Defendants and "threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959.  Prejudice to Defendants can be inferred from the Court's finding that Plaintiff deleted an unknown number of messages between herself and her witnesses with intent to deprive Defendants of their use in the litigation.  *See* Fed. R. Civ. P. 37(e)(2) advisory committee notes to 2015 amendment ("[T]he finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position.").  As Plaintiff's deleted communications with her witnesses have potential relevance to the merits of the case and could have been used to test the credibility of Plaintiff's claims, they likely would have been "at the heart of [Defendants'] defense were [they] available."[20]  *Leon*, 464 F.3d at 960; *see also Milke v. City of Phx.*, 497 F. Supp. 3d 442, 469 (D. Ariz. 2020) (finding spoliation of documents pertaining to the plaintiff's "early recollection or recounting of the crucial events" which might have contradicted "her current position" prejudiced the defendants).  Defendants have therefore been prejudiced by Plaintiff's willful spoliation.

### 3.    Lesser Available Sanctions

To determine whether dismissal is warranted, the Court must determine (1) whether

---

[20] Relevance can further be inferred from the messages which Plaintiff ultimately *did* produce.  The text messages that Defendants ultimately obtained from Plaintiff's iPhone 11 Pro Max were highly relevant and some—including messages from Plaintiff's putative husband—directly cast doubt on the veracity of Plaintiff's account.  (Doc. 439 at 6 n.4.)

less drastic sanctions are feasible or appropriate, (2) whether other sanctions have been tried, and (3) whether the sanctioned party has been warned that dismissal was a possible outcome.  *Adriana*, 913 F.2d at 1412–13.  While it is a "disfavored sanction that should be imposed sparingly," dismissal "is warranted here."  *Burris*, 566 F. Supp. 3d at 1018.

Several alternative forms of less drastic sanctions have already been tried in response to Plaintiff's violation of at least four orders by this Court.  *See* (Docs. 296, 308, 357, 367.)  In response to Ms. Foster's failure to produce her cell phone, her testimony was excluded.[21]  (Doc. 396 at 2.)  In response to Plaintiff's repeated disregard of the Court's orders to first produce the cell phones for imaging and then to produce the data extracted from the cell phones to Defendants, the Court awarded fees and costs to Defendants. (Doc. 413 at 2.)

Now Plaintiff represents that she cannot pay any monetary sanction and that she is unemployed.  (Doc. 474-1 at 1.)  Even assuming Plaintiff truly is unable to pay the award— which her sparse affidavit does not establish by any measure—all that proves is that further monetary sanctions against Plaintiff would not be effective in governing her behavior.  *See Milke*, 497 F. Supp. 3d at 476 ("[A] plaintiff who gratuitously imposes huge unrecoverable costs on his adversary cannot successfully oppose dismissal on the ground that he can't pay those costs, for then abuse of the litigation process to harass a defendant would be underdeterred." (quoting *Williams v. Adams*, 660 F.3d 263, 266 (7th Cir. 2011))).

Nor would less drastic nonmonetary sanctions, such as precluding Plaintiff's testimony or giving an adverse inference jury instruction, be effective.  Plaintiff's behavior over the last two years leaves the Court with little confidence that a trial could be conducted "with any reasonable assurance that the truth would be available."  *Anheuser-Busch*, 69 F.3d at 352.  Even if the Court were to impose one of the two sanctions mentioned above, the trial would be primarily based on the documentary evidence gathered in discovery.  But

---

[21] Ms. Foster was at all times represented by Mr. Nathanson, who should have advised her of her preservation obligations after the Court first ordered the production of her cell phone in March 2020.

Plaintiff has engaged in spoliation in a manner that undermines Defendants' ability to test her account and has presumptively deprived Defendants of evidence favorable to their defense. And while the Court has already imposed an evidentiary sanction by excluding Ms. Foster's testimony, this does not appear to have deterred Plaintiff from continuing to disregard the Court's orders. Because Plaintiff has repeatedly shown she is willing to disregard the Court's orders and has undermined the evidentiary record on which the jury would rely in reaching its verdict, no sanction less drastic than dismissal would adequately punish Plaintiff for her conduct in the litigation. *See Adriana*, 913 F.2d at 1413 (finding district court adequately considered alternative sanctions when plaintiff "continually disobeyed court orders," failed to pay prior sanctions, "acted in willful disruption of the discovery process," and left the court with "no reason to believe" it would comply with further sanctions).

"A plaintiff can hardly be surprised by a harsh sanction in response to willful violation of a [discovery] order." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 133 (9th Cir. 1987). Rule 37(e)(2) "explicitly state[s] that dismissal may be ordered for violation of" the rule. *Id.*; *see also Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). Plaintiff was also warned that the Court "reserve[d] the right to impose sanctions pursuant to Federal Rule of Civil Procedure Rule 37 as appropriate." (Doc. 409 at 4.) Nor should dismissal come as a surprise: Plaintiff has willfully violated the Court's orders for over two years, thwarting the discovery process and undermining the fairness of any trial on the merits. Therefore, the Court finds dismissal of Plaintiff's complaint to be the appropriate sanction for her misconduct.

## CONCLUSION

Faced with Plaintiff's discovery misconduct, the Court concludes that the only effective sanction that will appropriately punish her behavior and deter potential discovery misconduct in other cases is to dismiss Plaintiff's Fourth and Final Amended Complaint with prejudice. Because the Court determines that dismissal is the appropriate sanction for Plaintiff's spoliation, it declines to reach Defendants' Nonpayment Motion. Plaintiff and

Mr. Nathanson's failure to pay the award of fees and costs is not a basis for dismissal in this order.  The outstanding award of fees and costs is hereby final and may be enforced through the appropriate process.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Sanctions re: Intentional Destruction of Evidence and Spoliation (Doc. 439) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Sanctions for Plaintiff's and Plaintiff's Counsel's Violation of Order to Pay Fees and Costs (Doc. 469) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 434) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendants' Request for Leave for Leave to Respond to Separate Motion Reurging "Motion to Disqualify K.J. Kuchta and Digital Acuity" (Doc. 476) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Fourth and Final Amended Complaint (Doc. 99) is **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants and close this case.

Dated this 24th day of August, 2022.

G. Murray Snow
Chief United States District Judge